## Costen's Appeal—Reed's Estate.

Where there is a devise in fee with an absolute direction to sell, for the purpose of distribution, a conveyance of the land by a devisee passes his interest in the proceeds, when sold under the trusts of the will.

Powers of attorney and conveyances relating to such an interest, and professing to treat it as real estate, may be recorded under the acts of assembly for recording deeds, &c., relating to real estate.

A security on appeal from the Orphans' Court may be signed in blank and subsequently filled up by the clerks.

· The court will not quash an appeal which is perfected within three years, although the appellee, being a stake holder, has paid the money in accordance with the decree before the *certiorari* issued. And where this appeared to have been done, the court reversed the decree below, and declared the appellant entitled to the fund without directing further inquiry.

Where there is a reference to a master to ascertain the amount due under a decree, the court will not hear testimony taken before him, except so far as it relates to the account directed.

A bill of review will not be granted to inquire into the correctness of a decree reversing a decree below, on the ground that there were facts which show the decree below to have been correct, but which were not brought before the court at the hearing, where they were known at the hearing below.

Nor because after the decree below, and before *certiorari* issued, the appellee being a trustee, without notice, after search of an affidavit for appeal made, and under the advice of counsel, paid away the money in accordance with the decree. There being no allegation that such payment was compulsory.

ERROR from the Orphans' Court of *Philadelphia.*

February 20, 21.—In 1793, Henry Reed, after giving certain

legacies, devised all the rest, residue and remainder of his real and personal estate in manner following: One-fourth to his brother James, his heirs, &c.; one-fourth to his sons James and Henry, "and the other like fourth part thereof unto my son Robert Reed, by Elizabeth Wise, his heirs," &c. "And for the more speedy payment of the legacies aforesaid, and the more easy distribution of my estate among my residuary legatees and devisees, as aforesaid, I will and direct that all my houses, lots, lands, tenements and hereditaments, be sold by my executors, as aforesaid; and in the meantime, and until such sale shall be made, to let and demise the same for the best and utmost advantage of my residuary legatees and devisees." And he further directed, that the interest and rents arising from the respective parts or shares of his estate intended for his three sons, should be applied to their maintenance. The testator died shortly afterwards in Philadelphia.

In 1812 Robert Reed executed a power of attorney to Pomeroy, empowering him to sue for, recover and receive his equal fourth of the said estate, and to effect a settlement of his share with the executors or their heirs, and to execute all deeds that might be necessary touching his part or share of said estate, and generally to do all other things that the constituent could himself do in the premises. This power was acknowledged before two justices of the peace of Jefferson county, Kentucky, whose official character was certified by the clerk of the county court.— This deed was recorded at Pittsburg, December 22, 1812, but had been lost. Whether the certified copy was evidence, was one of the questions.

In 1841 the certificate of the clerk of the county court of Jefferson county was obtained, and a copy of this deed, which had been certified by the recorder of deeds at Pittsburg, setting forth that the two justices, at the date of their certificate, were *ex officio* judges of the said county court, and that there were no magistrates in said county at that time superior to them, and that there was no incorporated city in said county until 1827. To this was appended the certificate of the presiding judge of the court, and the certificate of the clerk that such person was the judge.

On the 24th December, 1812, R. Reed, by his attorney, Pomeroy, executed a deed, reciting that the testator died seised of a house and lot in Pittsburg, and the will devising to said Robert one-fourth thereof; and that the property could not be divided without injury to the whole; and that the parties had compromised and agreed, in lieu of the fourth of the house and lot, to take seven hundred and fifty dollars, in consideration whereof the one-fourth was conveyed to George Wallace, Jr., in fee.

This George Wallace, Jr., was at that time the executor of the surviving executor of the testator, Henry Reed.

Wallace entered on this property, and continued to hold it, accounting for the three-fourths of the rents, and devising it, as his house, to one under whom this appellant claimed.

In 1831, the present appellee, being the administrator *d. b. n. c. t. a.* of Henry Reed, brought an ejectment in the Circuit Court of the United States, against those claiming under Wallace. Judgment was recovered, and possession delivered under a *habere* in 1834. In 1835, the appellee sold the house and lot, under the trusts of the will, and the proceeds were brought into the administration account, for distribution.

The appellant claimed, as a purchaser, the fourth of the proceeds of the house and lot, or the return of the purchase money. The administrator of Robert Reed claimed the proceeds, alleging it was personalty; and hence the exemplification of the power of attorney was not evidence.

On this ground the auditor awarded the fund to the administrator of Robert Reed.

January 9th.—*Emlen* moved to quash the appeal. The facts on which he based his motion, which was heard with the appeal, were these. The report of the auditors was confirmed, June 16, 1846. On the 26th December, an affidavit for an appeal was made in the Orphans' Court, and the recognizance signed in blank, to be filled up for the proper amount by the clerk. It was proved by parol that the security, which was for costs only, was approved by the court. In January, 1848, the appellee paid over to the administrator of Robert Reed the amount awarded to him by the decree of the court below. On the 28th of March, 1848, a certiorari issued, and the record was removed. At or about this time the recognizance was filled up by the clerk.

*McMurtrie* and *D. W. C. Morris* for the appellant.—A rule of law, unknown to the parties, is set up to destroy the intention of their contract. But it is a plain misapplication of the rule. Until actual conversion, the interest of the parties, for the purpose of conveyance, follows the nature of the property. 2 *Atk.* 454; 18 *Ves.* 166; 1 *Bro. Ch..* 86; Curling *vs.* May, cited 1 *Atk.* 355; 2 *Ves. Jr.* 184. If the other devisees had elected to take as land, would not Robert Reed have been concluded by his deed, or would not his grantee have been the party to elect for his share? But it is settled, that before conversion the interest of the devisee will pass by a conveyance of the land, though the devisee takes but an interest in the future proceeds. This is directly ruled in 8 *W.* 212. The English rule is exactly the same: 1 *Jarm. on Wills*, 537; 4 *R.* 251. Would it be pretended that a devise in the words of the deed would not pass the interest? As yet, as to words of description there is no difference of construc-

tion between deed and wills.  12 *S. & R.* 268; *Jer. Eq.* 368; *Cowp.* 600; 3 *Swanst.* 427; *Gibb. Eq.* 144; 1 *Atk.* 618.  The party is estopped to allege that he had not the estate he professes to convey.  The power was well proven under 1 *Pet. C. C.* 433, *n*; 3 *Y.* 424.  The subsequent certificate validated it; 7 *W.* 334; so as to render it capable of registry.  It never is the question whether a party had land, but whether the deed purports to be "of and concerning land," that decides whether the instrument may be recorded.  The length of time alone will cure the defect, and afford a presumption of regularity.  10 *S. & R.* 162; 2 *Ves. Jr.* 280.; 3 *Atk.* 105.

The argument that this was a dealing between trustee and *cestui que trust*, is met by the proof that from 1812 until the auditor sat, more than twenty-seven years elapsed without objection, and then it was taken by the administrator of the grantor, who could have no knowledge of the facts.  10 *Barr* 394; 5 *Mad.* 54; 1 *Jac.* 631.

On the motion to quash, they argued that the recognizance, when filled up, became the act of the party signing it in blank having authorized it so to be done.  17 *S. & R.* 438; 10 *id.* 170.

*Emlen*, contra—The right rests upon the power of attorney. The act requires this should be proved, which it was not, but acknowledged.  The case in Peters was at Nisi Prius, and the court were divided.  It was not until 1819 that an acknowledgment could be taken.  The certificate in 1841 is insufficient, as it does not profess to verify the signatures.  The true mode is to show, by legal proof, that these persons were judges, not by an *ex parte* certificate.  The exemplification was, therefore, not evidence, not being a paper relating to the realty.  4 *Rawle*, 440; 7 *S. & R.* 14. The interest of the legatee was purely personal.  The estate was converted out and out, and he had no right but in the future proceeds.  *Le. & Dal. Eq. Conv.* 138; 1 *Vern.* 176; 2 *P. Wms.* 230; 2 *Story Eq. sec.* 790, *and n;* 1 *Br. Ch. C.* 497.  Now, unless he had a real interest, the cases show that his conveyence is not an instrument capable of registry; and that he has no such interest is decided in 2 *Rawle*, 185; 13 *S. & R.* 330; 8 *W.* 506; 10 *Barr*, 457; 4 *Rawle*, 242; 4 *Kent Com.* 186; 10 *Barr*, 219.  It purports to be a mere grant of the realty, whereas he had no such estate. The conveyance was, moreover, to one occupying the position of trustee at that time; and it is well settled that such party cannot purchase the trust estate.

On the motion to quash, he contended that the recognizance was a nullity, not having been filled up for fifteen months after it was signed; in which case, by the act, the appeal was void; and that before the certiorari issued, the appellees had paid under the decree.

[Costen's Appeal.—Reed's Estate.]

The opinion of the court was delivered by

COULTER, J.—The party has three years to make his appeal to this court. The appeal was perfected in that time. The only question is, whether the recognizance, signed by the surety in blank, and delivered to the officer to fill up according to law, and fix the sum at discretion, and which was afterwards, within the three years, duly filled up by the officer, is in fact the deed of the surety. Of this there seems to be no reasonable doubt. Clerks of the Orphans' Court, not only in this city but in many other parts of the commonwealth, are so much hurried and pressed by business, that they cannot, at the moment when the affidavit required by law is made by the party or his agent, (the court being then perhaps in session,) fill up and perfect the bond or recognizance; and it has grown into a custom to fill them up afterwards, upon distinct authority to do so being given to them by the obligor.

It is a slovenly and loose practice, I admit, and one which I do not desire to approve. But the question is, whether the bond, under such circumstances, is valid. The following case is very much in point. A. being in custody under an execution, applied to a judge of the common pleas, under the act of 1820, to give a bond and receive a discharge, and for that purpose he and B, his surety, wrote their names on a blank paper, and affixed their seals; and left it with the judge, desiring him to fill it up. The judge gave the discharge and took away the paper, and afterwards filled it up. Held, that the bond was valid and binding. 17 *S. & R.* 419. Stahl *vs.* Berger, 10 *S. & R.* 170; Sigfried *vs.* Levan, 6 *S. & R.* 308, go to establish that a bond, signed and sealed in blank, and afterwards filled up by the authority of the obligor, is valid and binding. This does not conflict with the authorities cited by the appellee, that a bond altered after execution, without the consent of the obligor, is void, as to him. The bond or recognizance is good, and the appeal taken in time. The motion to quash is refused.

The power of attorney from Robert Reed to Francis Pomeroy, under all the circumstances, is considered as sufficiently proved; indeed, after the great lapse of time, its existence might perhaps be presumed. The deed, in pursuance of this power, and reciting it, was executed in 1812, and in 1840 first disputed. During nineteen years of that time the alienee of Robert Reed was in the actual adverse possession of the estate under the deed. The deed being acknowledged before two justices of the peace in the county of Jefferson, in the state of Kentucky, who were *ex officio* judges of the county court, and the fact of their being such duly certified by the clerk of the county court, and a certificate of the presiding judge of the county accompanying the same. The power of attorney was, in 1812, recorded in the recorder's office

for Allegheny county, in this state, where the house and lot was situate, which gives rise to the litigation, and a deed made in pursuance of the power.    Additional certificates were given in 1841, by the county clerk and the presiding judge, after this dispute originated, to supply something that was deemed amendable.— The supplemental certificates were admissible in evidence to supply any defect in the former ones, on the authority of Bennet *vs.* Paine, 7 *Watts*, 334.    Altogether, the power was sufficiently proved to fulfil the substantial requisites of our recording acts, and to be admissible in evidence.

In early times, the emigration from the interior and western parts of the state, to descry and appropriate new lands in the valley of the Ohio, was prodigious, considering that Pennsylvania was but a fresh country.    Thirty years ago a vast many conveyances or deeds were made in Ohio and Indiana, for the lands which the emigrants had left behind them, and the proof and acknowledgments were made according to the condition of the country, chiefly before justices of the peace, rough hewn, but honest, and certificates given by the clerks of the county courts, all of whom acted from the best lights they had, or could acquire.    If we should hold the probate insufficient in this case, we would unsettle hundreds of estates, where the occupants have honestly paid their money for them, improved them, and on which they have long set their feet with firmness, as their homes and abiding places.    We cannot break up the repose of society upon technical niceties and quillets of the law.    If we did, the time would soon come when men would shudder as they met a lawyer on the streets. The age of substantial reason has come, in the application of principles of law to particular cases, and we must be faithful to it.

The front aspect of the case is, whether any interest, passed by virtue of the deed made in pursuance of this power of attorney to George Wallace, the younger, for the one-fourth of the house and lot in Pittsburgh.    It is contended by the appellee that the interest of Robert Reed, the *cestui que trust*, was personal estate, that he had no interest in the realty, and could not sell or convey it.    I may as well, at the outset, deliver this point from Harris and Forster, 10 *Barr*, 457.    That the marrow of the case is, that the personalty was not intended by the parties to be sold and bought, and that not only the intent of the parties but the language of the deed was fulfilled by the transfer of the realty, and that not one cent was paid for the personalty.    The same remark will cover the cases cited in relation to party walls.    But here what the appellee calls personal estate, was the very subject matter of the contract, and nothing else was embraced.    The parties sold and bought, and the price was paid under a full conviction that the interest of the vendor was an interest in the real estate.    The deed passed that, or it passed nothing.    I agree to the cases cited

by the appellee, to show that where lands are devised to be sold, and the proceeds are distributed, that a judgment against a distributee cannot sell the fee in the land.    These cases are sound law, and the reason is that the distributee has no interest whatever in the land; his interest is in the surplus of the money in the executor's hands after the lands have been sold.    But this case is different, and not within the dominion of those cited.    Because the testator devised the real estate to his brother and three sons as follows: "All the rest of my estate, real and personal, I devise and bequeath in manner following: one equal fourth part to my brother, James Reed, his heirs, &c.; one like fourth part to my son James, by Eleanor Elliott, his heirs, &c.; one like fourth part to my son Henry, by Martha Patton, his heirs, &c.; and the other like fourth part to my son Robert, by Elizabeth Wise, his heirs," &c.    He directs that his executors shall rent the lands until they are sold, and apply the rents to the maintenance of his sons, and then directs his executors to sell the lands, and divide the money.    Here is a distinct devise of one-fourth part of the house and lot to his son Robert.    In the circumstances of the parties we are furnished with the reason why the testator directed his executors to sell the house and lot, and other real estate, if he had any.    It seems that he was a gentleman who browsed at large; his children were minors, to be maintained and educated, and probably, with their respective mothers, lived in different states where he had sojourned.    The actual partition of the property would, therefore, be attended with difficulty.    The testator, therefore, gives his executors a power to sell the lands which he had devised to his sons, at their discretion, for the benefit of his sons, the rent, in the meantime, to go to their maintenance.    In principle it is the same as if a testator had devised land to a son and his heirs, and appointed a testamentary guardian, with power to sell for the maintenance and education of the son, and a neglect of the guardian to sell until the son arrived at age.    We are of opinion that Robert Reed had such an equity, at least in the house and lot in Pittsburgh, and arising or accrueing out of it, as enabled him to sell his share, and that whatever interest that was, would pass, subject to the debts of the testator, as in case of a direct devise of the fee, by the deed to George Wallace, the younger.    This view of the case conflicts with no adjudicated case, and is in harmony with several, and seems to be fully borne out by Jarman on Wills, a treatise of great respectability and authority.    Thus he says, page 537: "But although it is not in the power of an owner of an undivided share, or any partial interest in property, which is directed to be converted, by his single act to change its character, and thereby impart to it a different transmissible quality, it does not follow that every disposition by such partial owner, adapted to the the property in its actual state, is irregular."    In this case, the

deed was adapted to the actual state of the property by the owner. He had waited until his advent to lawful age. The property was unconverted, the executors dead; it was necessary far him to have its value; it could not be divided, and he sells for a full and fair price, and had the benefit of it, perhaps fourfold, in the lapse of time. During his life, he makes no objection; after his death, a mere volunteer, the administrator de bonis non of the estate, attempts to rake up from the depositories of time, some technical defect, to deprive the devisee of George Wallace, the younger, of the price paid for the land about forty years ago. The common sense and common honesty of mankind revolt against the claim of the appellee. Mr. Jarman cites many cases to show that conveyances, as land, of the shares in the proceeds of land directed to be sold, pass the interest in the proceeds. So that the deed of Robert Reed, if it did not pass an interest in the realty, did, nevertheless, pass the proceeds produced, and this would be quite adequate to the case of the appellant. All that the devisee of George Wallace seeks is the product of his share of the sale. In the case of Hay *vs.* Mayer, 8 *Watts*, 212, Mr. Justice KENNEDY says: They (the devisees) had no interest in the land. Each had a right to receive a certain portion of the proceeds thereof, when made, according to the directions and provisions of the will. Their claims, however, may be considered as assignable in equity, for a valuable consideration, and their deeds, as sufficient to bind and divest them in equity, at least, of their rights to any money that could be raised from a sale of the land under this power. This case goes beyond the exigencies of the present, and establishes, that if the interest of Robert Reed was nothing more than personalty, he would be bound and estopped from claiming any part of the money produced by the sale, under the power made by the administrator de bonis non. Lord Chancellor GILBERT said, *Equity Rep.* 144: For as the husband intended to divest himself of the whole fee, if it had been a fee, there was no reason, when it appeared to be a less interest, that this should not pass. This hits the exact view of the predicament of Robert Reed, as contended for by the appellee. He intended to convey real estate, if the interest was real estate; but, says the appellee, it was less, it was only personal. There is no reason, says Chancellor GILBERT, why that should not pass, if such was the interest. So that the interest of Robert Reed passed by his deed, whether it was real or personal estate, and the devisee of his alienee is entitled to the proceeds.

One other point only is it necessary to notice. That is, that Geo. Wallace, the younger, was one of the executors of George Wallace, the elder, who was executor of Reed, the testator, and that as both the executors of Reed were dead, in 1812, George Wallace, the younger, was the executor of Reed, and in making the

purchase was dealing with his *cestui que trust.* That is entirely different from dealing about, or buying the subject of the trust, without the assent of the *cestui que trust,* at judicial or other public sale. But even then, if the transaction was without fraud, and not against the interest of the *cestui que trust.* as when it sold for full value, he would not have an interest to demand a re-sale.

Lord Alvanley, in Campbell *vs.* Walker, 5 *Ves.* 678, says: There is no rule that a trustee cannot be a purchaser. But, however fair the transaction, it must be subject to an option in the cestui que trust, *if he comes in reasonable time,* to have a re-sale. Here time has cured all defects on this score. The volunteer administrator de bonis non, who never paid a cent, comes, on behalf of somebody, perhaps the heirs of Robert Reed, to demand the land and money for which Robert Reed was fully compensated and paid by George Wallace, the younger, in 1812. There is not a scintilla of evidence of fraud or circumvention; but all appears fair and honest, and the price paid fully adequate. Robert Reed lived and died acquiescing in the arrangement and sale, and Wallace and his heirs were eighteen or nineteen years in actual possession. It is too late to disturb the repose of the dead, or blacken the memory of Robert Reed, for the benefit of his heirs.

> The decree of the Orphans' Court is reversed, and the court decree and adjudge that Costen and wife are entitled to the money in dispute, produced by the sale of one-fourth of the house and lot in Pittsburgh, as devisees of George Wallace, who purchased from Robert Reed.
> The case is referred to the master, to report the sum due to Costen and wife, under the above decree; so that execution may issue from this court.

Before the master the appellee gave testimony for the purpose of showing that, upon other grounds than that relied on below, the decree below was correct; and that on account of the laches of the appellant, in perfecting his appeal, the appellee, in ignorance of the appeal taken, had paid away the fund, in accordance with the decree below.

On the coming in of the report finding the amount due, and reporting these circumstances specially, the counsel for the appellee proceeded to argue the case upon these circumstances; but the court said that the proper mode was by bill of review, if grounds would be laid; but that the testimony taken was not in accordance with the object of the reference.

May 1.—*Emlen,* for the appellee, presented his petition for a review, setting forth that the decree below was based on one ground only, viz: the sufficiency of the proof of the power of attorney; that a record of a suit in equity between the parties, at Pittsburgh,

though noticed by the Orphans' Court auditor, was inaccurately stated, and by it it appeared that the purchase money for the house and lot was not paid by Wallace, but was a mere advance out of the trust funds belonging to R. Reed; that it was not incumbent on him to bring this matter before the court until the reason relied on below was pronounced insufficient. He further alleged that search had been made for an appeal before the payment of the money under the decree, but none could be found, the affidavit not having been indexed; and that, under the advice of his counsel, he had made the payment in accordance with the decree.

For the petition, it was said this case resembled a judgment at common law, where there has been a reversal, when a *venire de novo* is of course. Here the party had no opportunity of bringing forward his case, having relied on the grounds taken below. That matters occurring after that decree could not be introduced on the record on an appeal, until that decree was disposed of; and there were facts exculpating the appellee directly within the rule laid down in Miller's appeal, *ante.*

*McMurtrie,* contra.—On appeal, the cause is heard *de novo,* and this court decides according to the justice of the whole case. All matters, up to the decree here, are *res judicata* in law, and some, relied on here as new matter, actually so in this case. The essentials of a bill of review are not and cannot be averred. *Mitf. Eq. Pl.* 83, 90.

May 2.—The court dismissed the petition for a review, and confirmed the report with costs.*